## RICKETTS ET AL *v.* R. H. CRITTENDEN.

**Stock Brokers—Specific Contract—Custom and Usage Amongst Brokers.**
Where in the pleadings, there is a conflict as to the terms of a contract between stock brokers, and no evidence tending to establish the agreement, the court will assume the contract to be according to the custom and usage between brokers and their customers in relation to transactions of a like **character.**

**Same.**
A broker is bound to obey strictly the orders of his customers or principal in relation to keeping or disposing or stocks in his hands, and so long as the principal keeps up his margin, the broker is not authorized to dispose of the stocks: should he do so he would be liable to his principal for the highest price the stocks may have attained during the time of the transactions.

APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

December 4, 1868.

OPINION OF THE COURT BY JUDGE PETERS:

From September, 1864, to March, 1865, inclusive of the months named, appellants were bankers and brokers doing business in the city of New York.

Appellee, being a dealer in gold and stocks to a large amount, made an arrangement with appellants to the following effect, as he states in his pleadings: That appellants were to buy stocks and gold for him as he should from time to time direct, they to advance what should be needed for that purpose, and to hold or carry the said stocks and gold for him, upon his keeping in their hands sufficient money or securities, as margin, to indemnify them against loss as they might from time to time require. They to sell said stocks, gold, &c., whenever he should direct sales to be made, and appellee was to allow them one-eighth of one per cent for purchasing, the same for selling, one-half per cent per month for carrying the stocks, &c., and interest at the rate of seven per cent per annum on the *advance* of the price of such purchases.

The contract as thus set out by appellee is denied by appellants, and there is no direct evidence of what the terms of agreement between the parties were.

This action was originally brought by appellee against appellants to recover of them $40,000, and $37,500 the value of 500 shares of stock in the Quicksilver Mining Company, which money and shares of stock he alleges he advanced to them in the week preceding the 16th of March, 1865, as a confidential loan to be returned in a few days thereafter.

In the answer the loans are admitted, not however on the terms and upon the promise to return as alleged; and the whole transactions are set out in the answer between the parties and a balance is claimed by appellants after crediting appellee by the sums sued for, and a judgment asked over against appellee for said balance, for which purpose the same is pleaded as an off-set. Judgment was rendered for appellee for a very large amount, and to reverse it appellants have appealed.

It is not necessary to make a more particular statement of the very elaborate pleadings in the case, as the three of the most vital questions involved may be stated and disposed of without doing so. The *First* of which is, Were 1,900 shares of stock in the Quicksilver Mining Company bought by appellants for and on account of appellee, in addition to the 5,700 shares admitted to have been purchased by them?

Without undertaking an extended analysis of the volume of evidence on this question, it is enough to say that after a careful consideration of the whole evidence, we are constrained to the conclusion by a decided preponderance that the said 1,900 shares of said Quicksilver Mining Company stock were purchased by appellants for and on account of appellee, and that in making up the accounts between the parties, he must be charged with the cost thereof, if the evidence remains as it is presented by this record.

*Second.* Shall appellee be charged with commissions for purchases and sales and interest on the par value of the stock purchased and sold for him; or shall he be charged with interest and commissions on the actual costs and sale prices of said stock, &c.?

This question is rendered embarrassing from the fact that the parties in their pleadings do not agree upon what were the terms of their contract, and there is no evidence, either written or oral, showing what were the precise.terms of their agreement, and in th absence of proof of a specific contract, the court must assume that the parties contracted with reference to the usage amongst brokers, and their customers, in relation to such transactions, if in

fact a uniform custom on the subject be established, and the same be known to the parties to exist at the time. It is in evidence that appellee had been engaged in the business of broker and banker himself in the city of New York, and the weight of the evidence conduces to the conclusion that the custom there was then to charge interest and commissions on the amount of the stock purchased, of which he may be presumed to have been informed. But it is not shown by the evidence that such interest and commissions are charged without regard to the advances made by the customers, or that they are not entitled to a deduction for the amount they may have advanced as margin, and a usage which would authorize or allow brokers or bankers to charge interest and commissions against their customers on the full nominal amount of stocks purchased, when they have in their own hands the funds of such customers to the amount of one-fourth or one-fifth of the total sum advanced, using in their business, is unreasonable and oppressive, and should not be recognized. If, therefore, appellee must be charged with interest and commissions on the nominal amounts, called in the pleadings the par value of the stocks purchased and sold, the amounts of his advances as margins must be first deducted, for it is in fact a part payment.

*Third.* On the subject of the sale of appellee's stock, the authoritatively settled doctrine on the subject, is that the broker is bound to obey strictly the orders of the customer or principal in relation to keeping or disposing of the stocks in his hands, and so long as the principal keeps up the margin, the broker is not authorized to dispose of the stock, and if he does so, he would be liable to his principal for a wrongful conversion at the highest price it may have attained from the time of the conversion to the bringing of the action. If, however, which seems to be the fact in this case, as the evidence is now presented, appellee failed to keep up his margin, and upon being informed that unless the additional required margin was advanced, the stock must be sold, and he consented to a sale, such sale would not amount to a conversion, and appellants would be chargeable with the price the stocks brought or were actually worth in the best market at the place and time of sale.

The gold account of appellee as made out and presented to him was palpably erroneous, as he was charged with the 7,600 shares of stock in the Quicksilver Mining Company he was entitled to

the dividends declared on that number at 5 per cent in gold, and he was also entitled to the 5 per cent gold dividend on 1,677 shares of Quicksilver Mining Company stock, making the dividend on the whole number of shares on which as the evidence here presents the case amount to $46,385 in gold, which amount according to the evidence appellants used by checking upon it in their business, and they should be charged with the value of the gold in currency at the time received by them, when it appears to have been worth $204¼ in currency to $100.

As to the sale and disposition of the Erie stock and the Mariposa stock, they will be governed according to the principles herein stated as applicable to the Quicksilver Mining Company stock, and appellee is entitled to an allowance for the dividend on the Erie stock.

As a new trial must be awarded, this court has endeavored in a condensed form to state the principles which seem to be applicable to the evidence, and should govern in any subsequent trial.

Wherefore, for the reasons herein stated, the judgment is reversed, and the cause is remanded with directions to award a new trial, and for further proceedings not inconsistent with this opinion.

*Speed & Barr, Crawford, for appellants.*

*Caldwell, Thompson, for appellee.*

